Thank you. May it please the Court, my name is Stephen Haskins and I represent the petitioner Mr. Al Saidi. Let me, I'm sorry Mr. Haskins, let me quickly make sure Mr. Stanton is also online and can see and hear us. Sure. As well. Okay, great, we got a thumbs up. Okay. Very well. The decision of the Board of Immigration Appeals raises substantial issues about the interplay between credibility and corroboration. Here, the immigration judge articulated that he had concerns regarding the quality of Mr. Al Saidi's testimony and the credibility of his four witnesses. The I.J. then went on to identify two alleged discrepancies, really three, but acknowledged that it was reconciled later, but two discrepancies between Mr. Al Saidi's testimony and the written statements of the corroborating witnesses, before ultimately concluding that Mr. Al Saidi failed to provide sufficiently persuasive testimony and failed to corroborate his claim. The Board adopted and affirmed that decision and correctly, I must say, recognized that the I.J.'s decision turned on the impact of those alleged inconsistencies. The Board wrote explicitly the I.J.'s decision highlighted significant concerns regarding the credibility of the testimony of Mr. Al Saidi. The I.J. doesn't, the BIA doesn't say that the I.J. made an adverse credibility determination, right? That's correct. What I'm suggesting... So it's true that these two things are separate, like adverse credibility determination would be an independent ground for denying immigration relief and lack of corroboration would also be an independent ground for denying immigration relief, right? That's correct. And the real... The BIA says that sometimes you require corroboration not because you've decided that the alien is not credible, but because it's the kind of story that should be corroborated, that like there is easily available documentation of the kind of thing you'd expect to be corroborated or maybe, you know, as in this case, the I.J. seemed to think it seems a little hard to believe that a kind of local family rivalry would attract the attention of a kind of nationwide manhunt for this particular person. And so I don't really know if I'm going to say that that's credible in the absence of corroboration. I mean, isn't that really what the I.J. said? The I.J. said, I can't really... I have concerns, but I can't really evaluate the testimony unless in the absence of corroboration. That's correct, Your Honor. Post Real I.D. Act, this circuit and most have repeatedly articulated the same sort of structure in regards to the interplay between those two issues. And what happens first is that every immigration judge is tasked with making a specific credibility determination. Now, that credibility determination could be a mixed credibility determination, but nonetheless, the requirement is that it's clear. Once... Well, the requirement is not that it's clear, right? Because under 8 U.S.C. 1158, right, if there's no adverse credibility determination that's explicitly made, you get a presumption of credibility on appeal to the BIA, right? That's right. And... So that means that there are circumstances in which there is no explicit adverse... And there wasn't that explicit. I mean, you might argue here that the I.J. effectively made an adverse credibility determination, but I think there's no argument that it explicitly made an adverse credibility determination, right? Right. But... So on appeal, that means that Al Saeedi would have had a presumption of credibility. He would have had a presumption of credibility. And one of my arguments to this Court, Your Honor, is reading the Board's decision, it's unclear if that presumption is actually applied. The only facts that they really sort of acknowledge are those that come from the country conditions evidence, which of course is... Well, that's a separate thing, right? So the I.J. says, I have concerns about the testimony, so I'm going to require corroboration. You didn't provide it, so I am denying relief on that basis. But then, even putting that aside and crediting the testimony, I think that the chain of events that lead to torture is too speculative or that there could be internal relocation, right? That's right. So there's two different bases here. Right. So for that purpose, the I.J.'s argument, and I think it's the BIA's argument too, is even accepting the testimony, it's too speculative. But those are two separate grounds, right? They are two separate grounds. What I'm suggesting to this Court is, well, a few things, quite frankly. First, that corroboration decision, though it is independently dispositive, it is somewhat reliant on that credibility determination that that judge first made, however unclear it may be. And the law supports that. The judge has to make a decision, and the BIA stated explicitly, explicitly, that in light of the inconsistencies of which we argued in our brief, that there are clearly trivial inconsistencies, so much so that they don't implicate the Real I.D. Act. Those trivial inconsistencies, I'm inserting that word, the I.J. found it necessary to provide a reasonably available, reasonably available corroboration determination in support of the claim. So what I'm suggesting is the interplay between those two things makes the corroboration determination independently faulty for a variety of reasons. Well, you're saying it's dependently faulty. You're saying it depends on the predicate, a predicate finding of inconsistencies. Correct. And I'm also suggesting that on its own it's faulty because the only information that both the I.J. and the Board give us with respect to the need for corroboration is that — But does the I.J. need to give any reason for corroboration? Yes. The I.J. does, and this circuit has found so. I'm going to cite a case, Diallo v. INS. It is pre-Real I.D. However, recent cases, Quintanilla, Mejia v. Garland being one of them, has stated that the pre-Real I.D. and the post-Real I.D. jurisprudence in this area closely track. And what I'm suggesting is that it is insufficient, wholly, for an agency to make a finding that Mr. Al-Saidi's wife, sister, and stepfather could have corroborated this claim by virtue of the fact that they're in the United States. That is the extent of the Court's finding. Well, you agreed with me a moment ago when I said that sometimes when the I.J. requires corroboration, it's because there's corroboration that's reasonably available and you kind of expect that kind of a claim to be corroborated. So if the I.J. had only said your sister and your adoptive father and, you know, these other relatives are in the United States and they know about the facts and could corroborate it, and yet they didn't provide testimony, and I think that I would have expected them to, and I'm going to say that you failed to corroborate, but it would have been within the I.J.'s discretion to do that, right? No. I believe that the I.J. has a duty to state that the corroboration sought to explain specifically what the corroborating evidence sought is and how those parties, in this case, because the corroborating evidence is the testimony of other people, how that would impact corroboration. And, again, here's where the interplay between the... Wait a minute. How would it impact corroboration? What does that mean? I apologize. I misspoke. What I'm suggesting to this Court is that the inconsistencies, the alleged inconsistencies, are so trivial or effectively nonexistent that that corroboration finding on its own cannot stand. Well, the BIA also said that it adopted the reasoning of the I.J. We agree with the I.J.'s reasoning and adopt and affirm his decision. So why doesn't that encompass the adverse credibility finding? Well, the question there becomes, was there an adverse credibility finding? We argued that there was. But what I'm suggesting... It doesn't really matter in a way, right? Because whether you conceive of it as an adverse credibility determination or you conceive of it as a justification for the corroboration, when the BIA cites Bourbano and says we adopt the I.J.'s reasoning, it's endorsing whatever it is that the I.J. did, right? It is. But as we all know, the I.J.'s are not infallible. Right. So then you would have to make an argument here, not that the BIA procedurally erred by not explaining its agreement, but you'd have to explain why the I.J. in fact was wrong to require the corroboration. Correct. And I can walk the Court through why I believe that the inconsistencies, the findings are... don't support their findings, whether it's a mixed credibility determination, whether it's the corroboration determination. Their findings, the testimony that they relied on, and the Board's statement that those inconsistencies... Well, let me talk about that. So one of the inconsistencies is the I.J. is very adamant. Like, tell me everybody who tried to mediate the dispute. Right. And he doesn't come up with his non-relative who tried to mediate the dispute, right? And the I.J. thinks that that is inconsistent with the written statement that... that... is it Galeb, I guess, tried to mediate the dispute, right? It is. The names are... So you're saying, well, he provided an explanation that, well, I didn't think of him because I was only thinking of the people who were authorized by our family to try to mediate the dispute, right? I mean, he provides that explanation to the I.J. Right. And the I.J. says, well, I don't find that compelling because I emphasized, I want to know everybody who tried to mediate the dispute. Right. But he didn't. If you look at the transcript, he asked a number of questions, like, tell me everybody. So why, you know... It is only... Don't you have to show that any reasonable decision maker would be compelled to accept your explanation? And why do you think it's unreasonable for the I.J. to say, well, that's not a sufficient explanation because I specifically prompted him to tell me everybody who tried to mediate the dispute? Yes. That would be the standard of review in assessing the finding that corroboration was necessary. And... Well, I don't... Okay. That's a... Okay, fine. But what I'm suggesting is that, on separate grounds, that corroboration determination cannot stand, whether it's Chenery, whether it's insufficient in and of itself vis-à-vis the credibility findings for this Court to affirm that decision. But why? So I just sort of said, he provided this explanation to the I.J., the I.J. didn't find it persuasive. Right. Because he said, look, I asked for everybody. I didn't limit it to people who were authorized by the family. Once... And why would any reasonable adjudicator be compelled to accept Saidi's explanation? Because it came from Mr. Al-Saidi himself, right? So once the judge said, no, I want everybody, then he reconciled it. He said, yes, of course, you want everybody. Okay. So there was the folks that were unprompted by the family, the folks that traveled to Yemen. Well, he didn't say that until after being confronted with the inconsistency, right? Right. So the I.J. says, tell me everybody. He provides a limited list. He says, I want to know everybody, you know, who ever tried to mediate it. He doesn't try the personalities. But you said... But there's this written statement about Galeb. Why didn't you explain... Why didn't you offer his name? And Mr. Saidi says, well, I thought you were asking... I was only talking about the people who were authorized that we didn't, like, ask him to mediate the dispute. Right. And the I.J. says, well, that's not a sufficient explanation because I asked for everybody. Right. Right. But so, you're saying the I.J. was irrational in not accepting that explanation? I believe that Mr. Al-Saidi properly reconciled that inconsistency. And I believe that his reconciliation rendered that a trivial inconsistency. And I believe that those trivial inconsistencies were then used to make a determination by the Court that corroboration is necessary. And then the Court went a step further, as it's supposed to do, and it made a finding that reasonably available corroborating evidence was available via these other folks. Without making a determination, what information do those folks have? That is not a dispositive finding that I believe this Court can affirm this decision on. Wait. Is that a separate problem? You're saying that he had to determine what information they had? I'm sorry? Can you repeat that? You're saying that I.J. had to separately determine what information the missing witnesses would have offered? Yes. Yes. I believe that the law requires the I.J. to make some representation of what that missing information is when they make... Well, I mean, the I.J. is very clear that what he's skeptical of is the notion that there really was a family, like that the Bowies really were looking for him and intending to kill him, right? Right. As far as the merits... Well, he explains about the other witnesses that, you know, somebody, one witness says, I heard from the women in the Bowie family that they're on the lookout for him. But then she says that she doesn't know any women in the Bowie family. So then she says, well, I heard from other people that that's what they said. That's another thing that he's worried about. So it's pretty clear that he's looking for testimony about the family rivalry, right? Yes. He's looking for testimony about the family rivalry, but there's four corroborating witnesses that testified. There was a motion. There was a statement in the record that the counsel representing Mr. Al Saeed needed four hours to present the case in chief, and the judge said, can't do that. It was also peak COVID. Nobody appeared in person. So this suggestion that these three folks, by virtue of the fact simply that they live in the United States and they've had some communication with Mr. Al Saeed in the recent past, that they were the key to this case, to me, that's insufficient. That's an insufficient agency finding. That lacks reasoned explanation. Okay. You agreed a moment ago that for the purposes of the speculative nature of the Kat claim and the internal relocation, the IJ and then the BIA accepted his account and said sort of even accepting this testimony, I think that the notion that he's going to be tortured relies on a speculative chain of events and that you could internally relocate because even assuming that the Houthis are linked to the Baois, they only control 80% of the territory. So what's the problem with that, those two things as an alternative basis for the denial of Kat relief? The problem with those two things is that the Kat analysis requires two things. A likely, the requisite likelihood of torture, which is effectively more likely than not, and some form of government acquiescence. And what happened here was that the court effectively found that 80%... The court strung together a series of suppositions which were partly superfluous. For example, Mr. al-Saidi did not need to demonstrate that he would be found at a port of entry in order to demonstrate that it's more likely than not that he would be tortured if he returns to Yemen. He didn't need to demonstrate that 300,000 Houthis are aware of the Baois, of the Baoi family's vendetta against him. Neither of those things were necessary to make those two findings. And why not? I mean, his claim is that the Houthis are going to find him and turn him over to the Baois, right? It only takes one, Your Honor. It would only take one. Now, obviously, that impacts the likelihood. If there's one person in the entire country of Yemen that is going to facilitate his torture, then it's not really more likely than not that he's going to be tortured because he's, he could avoid one person if he's returned, right? It impacts the likelihood. But the court actually looks at it backwards, in my opinion, right? They're almost penalizing him because there's so many folks and, therefore, it's unreasonable to think that he's consequential. That's how I read it. And I think that's wrong because, quite frankly, the evidence reflected that this family is targeting this gentleman and that they must hurt him. And so for the court... Well, the IJ wasn't persuaded of that because he thought that maybe there could be some kind of a settlement between them. But even assuming that the family was intent on hurting him, if, in fact, it's a family that's based in the city of Ib and he could locate in any other part of the country and avoid the risk of harm, then that would defeat his cat claim, right? So I thought it was necessary to his claim that, actually, it's very closely tied to the Houthis and the Houthis care a lot about the rivalry that they would turn him over. And now you're saying that it's not. But if, in fact, we're only talking about a local family rivalry in one city in the country, then isn't it pretty straightforward that he could avoid that city and thereby avoid the risk of harm? I don't believe so. And he already had this run-in with the family here in New York. So, quite frankly, he did testify that they would know when he enters Yemen. Again... Right. You're saying that the I.J. made a mistake by taking him at his word that that's where the risk of torture comes from. No, I'm suggesting that the I.J. made a mistake in finding that he needed to demonstrate that it's more likely than not that they would recognize that he arrived in Yemen as soon as he enters a particular port of entry. And I'm suggesting that they made... Well, the I.J. also says they don't have a kind of centralized surveillance system where even after he enters, they could locate where he is in the country to then turn him over. Right. So if both of those things were true, they won't know when and where he enters. And once he's there, they won't be tracking him around the country. Doesn't that mean that he could avoid this one family based in one city in the country? There's also this, Your Honor. Kat can be satisfied by virtue of one actor acting under color of law. His testimony that this family has this relationship with the Houthis where effectively this gentleman, Allah Bawi, is the leader of a militia group. If this gentleman seeks... He can be satisfied by one actor only if it's more likely than not that the applicant for the cat relief is going to end up under the control of that one actor. And the I.J. is not persuaded that he had showed that it was more likely than not. Right. But we're suggesting that the I.J.'s findings are erroneous because the I.J. used the sheer number of Houthis as a negative against Mr. Al Saeedian. Okay. You're reserved a few minutes for rebuttal. We'll hear from the government. Thank you. Mr. Stanton? Ah. Can you hear me okay? Yes. All right. Good afternoon. May it please the court John Stanton for the respondent. As Judge Manaschi pointed out, the lack of corroboration is an independent basis for denying a claim for immigration relief or protection. And that's what the agency did here. Just very briefly,    to address opposing counsel's  that the I.J. was required to specifically point out the corroborative evidence that the missing witnesses would have provided. He did not make that argument in his administrative appeal brief to the board. That argument is unexhausted and we are invoking the mandatory claims processing rule in the hope that the court would include that consideration in that argument. But it wasn't just the discrepancies which we think are significant enough to require corroboration. The immigration judge also noted early on in his opinion that the three witnesses on the side of the petitioner who testified telephonically the immigration judge was not in a position to observe the demeanor of those witnesses. The petitioner himself testified via video conference.  while the judge did see his  testimony  clear. The judge also noted some issues with his testimony. Can I just back up a second? You say that the argument is unexhausted about whether the IJ needs to  the missing corroboration. Let's assume that it were exhausted. Is it correct? I'll be honest John. If it was exhausted I would have   issue. I don't know off the top of my head whether it is. I do know that this court in 2018 the way it's done versus Sessions case in 2018 does not require the immigration judge to give advanced notice of any potential issues that would require corroboration. If so I mean that's I mean Mr. Al Saidi has a kind of  argument which is the IJ said I'm requiring corroboration because of my concerns with all of this testimony and then in his brief to the BIA he said I don't think that those concerns were justified and then the BIA says well he doesn't really challenge the corroboration requirement but if that was the reasoning by which the IJ required corroboration why wasn't that sufficient to challenge the requirement of corroboration? Just to make it clear to not challenge the fact that the evidence was reasonably available Judge I agree with that as a general matter I think it's right that the IJ does not need to provide does not need to make a determination about credibility before requiring corroboration it might just be that you can't evaluate the testimony in the absence of corroboration and that's the whole point but in this case the IJ did explain why he was requiring corroboration and the appeal to the BIA did challenge that reasoning so why was the BIA correct to say that the argument about corroboration was waived? Alright so let me get out of my thoughts and so yes what the board did in his brief he basically said that he treated the immigration judge's  as if the judge had made an adverse credibility determination which was wrong I think that's the way the  read his brief this wasn't an adverse credibility determination it was a lack of corroboration I think the board the agency understood that there was some he wasn't making it up there was some plausibility to his claim we know that he seriously injured members of the family in the United States and he presented some evidence that for lack of a better word revenge is a thing in Yemen so what I think the whole notion that he met his burden of proof for the likelihood of torture and acquiescence based on his fear of the Bowie family I think that's what the lack of marriage arguments concerned just because of the discrepancies themselves I mean what was not I mean the entire basis for requiring cooperation because we point out in our brief even if the judge says you're absolutely credible I believe everything you say but I don't find it persuasive enough to meet the necessary 50 percent likelihood of torture to success so I mean and again in his administrative appeal brief the board was only talking he was treating as if the immigration judge had made an adverse credibility finding which we submit he didn't when the immigration judge is talking about cooperation in the adverse credibility context he usually talks about rehabilitating the adverse credibility the word rehabilitation does not appear in the immigration judge's  or the board's  for that matter it was a lack of persuasion and that's what I think was missing in the what are you saying he should have done in the appeal to the BIA in order to challenge the requirement of corroboration I mean he should have said I mean what could be done I mean that question actually came up in the moot and we really did not really have a very good answer he obviously didn't dispute the fact that the evidence was reasonably available but I mean so obviously you could say that the  the corroborating evidence is not reasonably available so that would be a challenge to corroboration but you know the BIA says he doesn't make an argument about the need for corroboration or the availability of additional evidence so I think everybody agrees he doesn't he didn't make an argument about the availability of the evidence but I guess my question is didn't he have met my burden of proof and therefore you never should have required corroboration we dispute the merits of that  but I understand your inquiring whether or not he actually waived the argument so but for the reasons I was getting into as well it wasn't just the evidence   about the inconsistencies would not undermine the credibility sorry the requirement of corroboration because the IJ had other reasons yes yes and I guess because the BIA makes this verbano invocation to say that they agree with their reasoning of the IJ is that tantamount to the BIA agreeing with the IJ that there were significant questions about the testimony that required corroboration I would agree with that your honor yes yes I would agree with that and then you know we have talked about the other arguments denying pat relief so the question about each step in the chain of the  that he's going to be  was not more likely than not to occur and the possibility of internal relocation so are those arguments available independent of what we think about the corroboration finding to deny to deny the petition well to deny the petition yes absolutely I don't think the petitioner can win unless he also deals with both issues both the corroboration as well as the merits but I'm happy to address the merits if that's what you're asking for I was inviting you to do that yes okay yes alright one thing I want to make one thing absolutely clear the United States disputes very strongly that the Houthis are state actors so I read the administrative record on page 333 we designated the Houthis as a terrorist organization in 2021 that is still the case today I talked with this isn't in the record but I talked with DHS they tell me that when they deport people to Yemen and they were still doing it they will give the deportees to the custody of the Houthi governmental officials so whether that's in an airport or port of entry they will not give the deportees to Houthi opinion to Houthi members so the I mean and if the immigration judge just to tie that point to the record here I guess the agency in this case had found that the Houthis control 80% of the territory you're saying that you return people to the 20% of the territory that's controlled by the Yemeni government is that is that that's correct unlike asylum where the relocation inquiry bears unreasonableness in the cat context the inquiry for cat depends on whether it's possible so based on the fact that 20% of Yemen is still under control of the Yemeni government including cities the capital of the city is a city called Aden and there's an airport there I presume that's where petitioner and the other Yemeni deportees will be sent so and the Houthis do not control that territory if he stays in Aden or some other city in southern Yemen where the Houthis do not control it is at best most speculative that the Houthis will discover him and then turn him over to the Bawi family as you said earlier Judge  there's no evidence that the Houthis have a central database they're not the FBI they're not Scotland Yard I mean they won't be able to type into a computer oh this person is wanted by this Bawi family over in the town of Id so I mean and there's well they control 80% of the territory it doesn't mean they have some kind of extensive operation right they control I mean they control territory but the fact they're not there's no evidence they're communicating with each other to find individuals to transport them to places where they may be wanted but for whatever reason so I mean these again I mean they're terrorists so but yeah but okay thank you  I think we have your argument I'll thank the court very much for granting my motion to appear remotely it's shut down very difficult times some of my colleagues are having trouble being reimbursed for their travel expenses so thank you very much thank you counsel we'll hear about them thank you very briefly I'd like to respond to what to what counsel said regarding the practices of what happens in Yemen when deportees are returned but none of that's in the record well yeah that's why I responded to that point by trying to connect it to the record so what we do have in the record is a finding that the Houthis control 80% of the territory and not the other 20% and like that is the basis of I guess you know it could be the basis of either one of these determinations one is that he's not more likely than not to be tortured and two is that there is a possibility of internal relocation so right so why are those findings a basis for denying the petition here I would only add your honor that that the reasonability of relocation implicit in that not implicit explicit in that relocation internal relocation must be done safely and this is a gentleman who has a family who's backed by this group targeting him and I think that's unaccounted for in the record this isn't just a situation where hey if you're undetected you'll be fine this is someone who has people that are actively looking for him well that's I mean the district court I'm sorry not the district court but the IJ and then the BIA affirmed it said that actually there aren't people like I have not persuaded that there are people actively looking for him right well I don't I think or at least that the even if there are is the family that would be interested in looking for him the rest of control of the country even if the Houthis are there it's not obvious that the it's not there's not enough support for the idea that the Houthis are actively looking for him in order to turn him over to those people I don't know that the I think you said in your argument a moment ago that actually you know he did not you don't think he needed to show that all the Houthis were looking for him and it was enough just to say that the Balwis were looking for him right well not necessarily that the Balwis were looking for him what I pushed back on was the finding from the court that by virtue of the fact that there are estimated 200 to 300 thousand Houthis in Yemen that that actually weakened Mr. Al Saeedi's  because again the implication was that he's so inconsequential to this massive group that's the claim that I pushed back on and the only other thing I wanted to touch on your honors if you'd like me to go back to the issue of preservation of the corroboration issue is this court has held several times that the contours of a particular argument can be shifted somewhat and going back to what I said earlier what I'm suggesting is that it's it it doesn't work for this court to simply state that those inconsistencies in Mr. Al Saeedi's  make it necessary that he corroborate his testimony and then find that the missing evidence that was when uncorroborated was the testimony of these three people by virtue of the fact that they reside in the United States and have had a conversation with Mr. Al Saeedi that that doesn't compute that isn't resolving anything that is what I'm suggesting and but the the IJ emphasizes that they're in the country just to show that it's reasonably available the reason why they have relevant knowledge is because they're involved in the they're involved in the family in the dispute right the adoptive father is the father of the guy who assaulted the rival Yonkers the wife was with him in Yemen and would have known how safe he was and what he needed to do to flee from the rival family are you really disputing that those people would have relevant knowledge I am the record reflects that the judge inquired if he has recently spoken to his sister if he's recently spoken to his wife to which he answered yes and that was the extent of the inquiry and regarding relevant for you know deciding whether he should have provided the testimony right so like the IJ says well you know you've spoken to your wife she is somebody who's with you in Yemen would know about the threats to your life in Yemen because you're in constant communication and you were there together it is reasonable to expect you to provide that testimony and there was four other folks that had information as well and there may be countless others we don't know and so putting aside whether the IJ should have required it or not is there a reason why Mr. El-Sayed could not have provided testimony from the record reflects that what he said in the merits hearing was that his they asked his attorney if his wife would be helpful he stated that by virtue of the fact that she didn't speak English and that she and because of COVID she wouldn't be able to be present in the office while testifying that that they decided to use four other people or three ultimately because one person didn't testify thank you your honor thank you counsel thank you both we'll take the case under advisement thank you